MCC:KLM:all/2001V00746

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DANA SCOTT MAYE-EL,          :
    Petitioner           :    No. 1:cv-01-1258
                             :
    v.                   :    (Judge Kane)
                             :    (Magistrate Judge Smyser)
JAKE MENDEZ, Warden          :
    Respondent           :

RESPONDENT'S RESPONSE TO
THE PETITION FOR WRIT OF HABEAS CORPUS

This is a habeas corpus matter brought under 28 U.S.C. §2241, by a federal prisoner, Dana Scott Maye-El,[1] who presently is confined at the Allenwood United States Penitentiary in White Deer, Pennsylvania ("USP Allenwood"). Respondent is Jake Mendez, Warden of USP Allenwood.

Maye-El challenges the computation of his federal sentence claiming that he did not receive proper credit for his presentence confinement for the period of time between February 25, 1994, through October 1, 1994. The government maintains that Maye-El received credit for this disputed period toward the satisfaction of two state sentences, which cannot be re-credited to his federal sentence, such that the Bureau of Prisons has correctly computed Maye-El's sentence.

---

[1] Petitioner currently uses the name Dana Scott Maye-El. He was formerly known as Dana Scott Maye and was charged, convicted and sentenced under the name of Dana Scott Maye.

## Statement of the Case

On February 25, 1994, Maye-El was arrested by Port Authority police, Hudson County, New Jersey, for the following state offenses: Armed Robbery, Possession of a Weapon for Unlawful Purposes, Unlawful Possession of a Weapon, Possession of Defaced Firearm, and Possession of Prohibited Device. R.2-3, ¶6; 18; 34.[2] Maye-El was then placed in the Hudson County Jail, New Jersey. At that time, the State of New Jersey had <u>primary</u> custody over the Petitioner. R.3, ¶7.

A federal indictment was issued in the United States District Court for the District of New Jersey at No. 94-CR-443, charging Maye-el, having been convicted in New Jersey Superior Court on December 10, 1992, of a crime punishable by imprisonment for a term exceeding one year, of knowingly possessing a firearm on or about February 25, 1994, in violation of Title 18, United States Code, Section 922(g). R.3, ¶8; 11, 18.

On March 9, 1994, a bench warrant was issued for Maye-El's arrest for a violation of **state** parole (apparently related to the December 10, 1992 state conviction referenced in the federal §922(g) indictment); Maye-El was detained by state officials pending the outcome of the state parole violation proceedings, as

---

[2] "R.__" stands for the Record filed in support of the government's response to this habeas petition. The Record includes the declaration of BOP Inmate Systems Manager Angelini (R. 1-10), plus other documents concerning Maye-el's various convictions and sentences.

2

well as pending resolution of the new **state** charges stemming from his February 25, 1994 arrest for armed robbery. R.3, ¶9; 13.

Subsequently, Maye-El was found to have violated his state parole and he was given a state parole violation term with a maximum expiration date of October 2, 1994. See R. 4, ¶12.

In the interim, on September 14, 1994, while awaiting the disposition of the state armed robbery charges but while serving the state parole violator term, the United States District Court issued an order transferring Maye-El from the custody of Hudson County, New Jersey to the custody of the U.S. Marshals Service, Newark, New Jersey until further order of the court. R.3, ¶10; 21.

Because Maye-El was serving his state parole violator term and the **state** charges stemming from the February 25, 1994, armed robbery arrest were pending, Maye-El was in the primary custody of the state at the time the United States Marshals took custody of Maye-El. (To explain, the sovereign that first arrests an offender has primary custody over that offender, unless that sovereign relinquishes custody to another sovereign by, for example, bail release, dismissal of the state charges, parole release, or expiration of the state sentence. R.4, ¶11.) Accordingly, since the State of New Jersey had not relinquished custody of Maye-El at the time of the September 14, 1994 order giving temporary custody to federal authorities, federal authorities assumed only secondary custody over Maye-El. R.3, ¶10.

3

We also note that at the time the September 14, 1994, federal order was issued, which gave federal officials secondary custody of Maye-El, Maye-El would not have come under primary federal custody prior to that date, or at an earlier date established by state officials for release, until the state charges stemming from the February 25, 1994 arrest for armed robbery were either adjudicated, dismissed, or otherwise resolved. R. 4, ¶12; 28.

On April 12, 1995, Maye-El was sentenced by the United States District Court to a federal term of imprisonment of 103 months for the offense of Possession of Firearm by Convicted Felon. R.4, ¶13; 24.[3] Additionally, Maye-El received credit on his federal sentence from October 2, 1994, through April 11, 1995. R.2, ¶4; 43. Although Maye-El was still under the primary custody of the state, Maye-El was committed to the United States Penitentiary, Lewisburg, Pennsylvania, on June 1, 1995, for service of the federal sentence imposed. R.5, ¶13; 24. This was in error, however, in that the State of New Jersey still had primary custody over Maye-El because his state charges had not been resolved. R.5, ¶13; 29, 30.

On September 6, 1996, Maye-El was removed from federal custody pursuant to the Interstate Agreement on Detainers Act based upon Maye-El's request for disposition of the state charges

---

[3] Maye-El was also ordered to pay a $50.00 dollar felony assessment. R.2, ¶4; 23-25.

4

stemming from the February 25, 1994, state armed robbery arrest. R.5, ¶14; 28.

On October 11, 1996, Maye-El was sentenced for the state armed robbery charges under Indictment Number 934-7-94, in Hudson County Superior Court, Hudson County, New Jersey, to a term of 10 years imprisonment, which was to run concurrent to Maye-El's present federal sentence and any parole violation term. R.5, ¶15; 32. Furthermore, Maye-El was to receive credit for time spent in custody in the amount of 960 days for the following period of time: February 25, 1994, through October 11, 1996. R.5-6, ¶15; 43.

Respondent notes that there is some confusion regarding Maye-El's final adjusted release date from his state parole violation term. Specifically, the record in support of this response, at R.15, indicates that Maye-El's full term release date was September 28, 1994. Other documents (R. 18, 28, and 43) indicate a full term release date of October 2, 1994. This creates a four-day difference.

Despite this confusion, the undisputed fact is that Maye-El received credit for and served the state parole violation term. R.6, ¶ 18, 43. Furthermore, the New Jersey State Judgment & Commitment Order indicates that an award of credit was made toward the satisfaction of the 10-year sentence for a portion of the same period of time. R.6, ¶18; 32.

5

Respondent notes that Maye-El has exhausted available administrative remedies regarding the computation of his sentence. Maye-El currently has a projected release date of June 4, 2002, via Good Conduct Time Release provided Maye-El receives all Good Conduct Time available pursuant to Title 18, United States Code, Section 3624(b). R. 8-9, ¶23; 43.

### Question Presented

Should the habeas petition be denied as the Bureau of Prisons has correctly computed Maye-El's sentence?

### Argument

**THE HABEAS PETITION SHOULD BE DENIED AS THE BUREAU OF PRISONS HAS CORRECTLY COMPUTED MAYE-EL'S SENTENCE.**

Maye-El is requesting credit for the period of time from February 25, 1994 (the date of his arrest on federal charges) through October 1, 1994. [Recall that although Maye-El was sentenced on the federal §922(g) sentence on April 12, 1995, Maye-El received credit on his federal sentence from October 2, 1994, through April 11, 1995. R.2, ¶4; 43. Thus, Maye-El is seeking credit on his federal sentence only for the period of time between his federal arrest and the date he began to receive credit towards service of his federal sentence].

Maye-El's request should be denied because he already has received credit for this period of time on his state sentences. 18 U.S.C. §3585, which controls the award of <u>prior</u> custody credit, states:

6

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-
>
> > i. as a result of the offense for which the sentence was imposed; or
> >
> > ii. as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. §3585(b). Additionally, 18 U.S.C. §3568 states that "the sentence of imprisonment shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence."

In this case, on March 9, 1994, a bench warrant was issued for Maye-El's arrest for violation of state parole. He was detained pending the outcome of the state parole violation proceedings as well as the new charges stemming from his state arrest on February 25, 1994. The State of New Jersey, thus, retained primary custody of Maye-El.

On September 14, 1994, while awaiting the disposition of the state charges and during the service of the state parole violator term, a federal judge ordered Maye-El to be transferred to the custody of the U.S. Marshals Service until further order of the court. At that time, federal authorities assumed secondary custody over Maye-El. Subsequently, on April 12, 1995, Maye-El was sentenced to a federal term of imprisonment of 103 months.

7

Although Maye-El was committed to the United States Penitentiary, Lewisburg, Pennsylvania, on June 1, 1995, for service of the federal sentence imposed, this was in error as Maye-El's state charges had not been resolved and the State of New Jersey still had primary custody over Maye-El.

Subsequently, on September 6, 1996, Maye-El was returned to New Jersey based upon Maye-El's request for disposition of the state charges stemming from the February 25, 1994, state arrest. On October 11, 1996, Maye-El was sentenced in state court to 10 years imprisonment to run concurrent to Maye-El's present federal sentence and any parole violation term. Furthermore, Maye-El was to receive 960 days credit for time spent in custody from February 25, 1994, through October 11, 1996. Thus, Maye-El also received credit toward the satisfaction of his state parole violation from February 25, 1994, through October 11, 1996.[4]

It is clear that Maye-El's federal sentence could not become operative until his release from the state sentence since

---

[4] Although some documents received from the state indicate that Maye-El's full term release date was September 28, 1994, while other documents received from the state indicate a full term release date of October 2, 1994, the undisputed fact is that Maye-El did receive credit and served the state parole violation term. Furthermore, an award of credit toward the satisfaction of the 10-year sentence for a portion of the same period of time was made by the state. It is therefore immaterial whether there is a difference of 4 days that may not have been applied from September 29, 1994, through October 2, 1994, to the parole violation term, since this period of time was also awarded to Maye-El's 10-year state term.

the state authorities retained primary jurisdiction over Maye-El, and Maye-El's federal custody did not commence until the state authorities relinquished him on satisfaction of the state obligation. See Del Guzzi v. United States, 980 F.2d 1269 (9th Cir. 1992); Thomas v. Whalen, 962 F.2d 358 (4th Cir. 1992); Hernandez v. United States Attorney General, 689 F.2d 915 (10th Cir. 1982); Roche v. Sizer, 675 F.2d 507 (2d Cir. 1982); Crawford v. Jackson, 589 F.2d 693 (D.C.Cir. 1978); Cobb v. United States, 583 F.2d 695 (4th Cir. 1978).

Thus, since Maye-El received credit for this period of time (February 25, 1994, through October 2, 1994) toward the satisfaction of not only one, but two state sentences (the parole violator term and the 10-year state sentence), pursuant to 18 U.S.C. §3585(b), the BOP is precluded from awarding crediting this same period of time toward the satisfaction of Maye-El's federal sentence.

We note that if Maye-El had been returned to state authorities at the conclusion of his sentencing on federal charges on April 12, 1995, since they still had primary custody over Maye-El, Maye-El would not have been received into federal custody until May 17, 2000, when his parole was granted on the 10-year New Jersey state sentence. At that time, Maye-El would have commenced service of his 103-month federal sentence, with a projected release date of November 8, 2007, with **no prior custody credit,** since it would have

been applied towards his state sentence and parole violator term. Instead, since Maye-El was erroneously placed in federal custody, the Bureau of Prisons exercised its discretion and did not return Maye-El for placement in state custody due to the age of his case. <u>See</u> R.30. Despite Maye-El's allegations to the contrary, therefore, his sentence has been computed in accordance with existing case law and Federal Bureau of Prisons policies and procedures.

**CONCLUSION**

For all of the foregoing reasons, the petition for writ of habeas corpus should be denied.

Respectfully submitted,

MARTIN C. CARLSON
United States Attorney

KATE L. MERSHIMER
Assistant U.S. Attorney
ANITA LIGHTNER
Paralegal Specialist
228 Walnut Street, 2nd Floor
P.O. Box 11754
Harrisburg, PA   17108-1754
717/221-4482

Date: August 27, 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DANA SCOTT MAYE-EL, :
      Petitioner : No. 1:cv-01-1258
       :
    v. : (Judge Kane)
       : (Magistrate Judge Smyser)
JAKE MENDEZ, Warden :
      Respondent :

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 27th day of August, 2001, she served a copy of the attached

**RESPONDENT'S RESPONSE TO
THE PETITION FOR WRIT OF HABEAS CORPUS**

by placing said copy in a postpaid envelope addressed to the person(s) hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

Addressee:

Dana Scott Maye-El
Reg. No. 18118-050
USP Allenwood
P.O. Box 3000
White Deer, PA 17887

ANITA L. LIGHTNER
Paralegal Specialist